USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED: 3/24/26

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

| | | |
|---|---|---|
| ABRAHAM BAGINSKY, | : | |
| | : | |
| Plaintiff, | : | 25-cv-1992 (ALC) |
| -against- | : | |
| | : | **ORDER & OPINION** |
| ZYNGA, INC., | : | |
| | : | |
| Defendant. | : | |
| | : | |
| | : | |

------------------------------------------------------------x

**ANDREW L. CARTER, JR., United States District Judge:**

Plaintiff Abraham Baginsky ("Baginsky" or "Plaintiff") brings this action against

Defendant Zynga, Inc. ("Zynga" or "Defendant") alleging claims for deceptive business, trade,

or commerce practices ("Count I"), false advertising ("Count II"), fraudulent inducement

("Count III"), and fraudulent concealment ("Count IV"). Defendant Zynga, Inc. moved the Court

to (i) compel arbitration pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 et seq.,

and (ii) stay these proceedings pending the outcome of arbitration. ECF No. 22. For the reasons

outlined below, Defendants' Motion to Compel Arbitration is **GRANTED,** and this case is

**STAYED** pending arbitration.

## BACKGROUND

### I.      Factual Background[1]

Defendant Zynga Inc. (hereafter "Defendant") is a global interactive entertainment

company that develops and publishes online video games, including Zynga Poker. Second

---

[1] The Court restates here only those facts necessary to the resolution of this Motion. The factual background restated here is drawn from Plaintiff's Second Amended Complaint ("Amend. Compl.", ECF No.9) and the parties' submissions in support of (ECF Nos. 23-25, 29) and in opposition to (ECF Nos. 26-28) the pending motions.

Amended Complaint ("SAC"), ¶2.  Zynga Poker purports to facilitate online poker games that replicate the real-life card game between millions of users around the world. *Id.*, at ¶¶21,24.

Plaintiff began playing Zynga Poker in 2008. *See* ECF No. 26 at 2. After a period of inactivity, he agreed to the terms and service of the application and began playing Zynga Poker again in 2024. *Id.*; SAC at ¶80. Over the next several months, Plaintiff alleges he noticed patterns of card-dealing sequences that in real-life would have an extremely low probability of occurring randomly. SAC at ¶33. Plaintiff alleges he lost more than $270,000 in funds spent on the game in over 150,000 rounds and 110 hours of gametime. *Id.* at ¶17. He has recorded more than 60 hours of gameplay, including a seven-hour video of consecutive play. *Id.* at ¶18. From this footage, Plaintiff alleges that the algorithm inflates actions inducing other players to act, namely through "action flops"[2] and "matching hands,"[3] which should occur much less in real-life games of poker than in Zynga Poker. *Id.* at ¶¶37-41. Plaintiff alleges these scenarios create a misleading sense of opportunity, enticing players to use the game longer and make larger bets. *Id.* at ¶43.

Plaintiff accessed the Zynga Poker app on March 20, 2024. *See* ECF No. 24 ¶ 22. Upon entering the app, a player is presented with a screen that prompts the user to either "[l]ogin with existing account" or "[c]reate new account." *See id.* ¶ 13. A fixed banner is present at the top of the screen above these two options and states "[b]y clicking one of the buttons below, you agree to Zynga's Tems of Service." *See id*. ¶ 15. The phrase "Terms of Service" is underlined, in a different colored font, and is hyperlinked to the terms of service. *See id*. ¶¶ 16-17.

The first section of the terms of service contains a paragraph outlining the Arbitration Agreement[4]:

---

[2]  A community flop that creates strong hands or draws, leading to significant betting and raising among players.
[3] When two players have the same value of cards.
[4] The Court may consider extrinsic declarations and documents in deciding a motion to compel arbitration.  *See Meyer v. Uber Techs. Inc.*, 868 F.3d 66, 74 (2d Cir. 2017) (a court deciding a motion to compel arbitration applies a

THIS AGREEMENT CONTAINS A MANDATORY ARBITRATION CLAUSE AND A WAIVER OF CLASS ACTION AND JURY TRIAL RIGHTS FOR ALL USERS RESIDING IN THE UNITED STATES . . . FOR ALL COVERED USERS, UNLESS YOU OPT-OUT VIA THE PROCESS IN SECTION 15.5(3), YOU WILL BE BOUND BY THE ARBITRATION AGREEMENT, WHICH MEANS THAT YOU AND TAKE-TWO WILL BE REQUIRED TO RESOLVE ANY DISPUTE, SUBJECT TO LIMITED EXCEPTIONS, BY FINAL AND BINDING INDIVIDUAL ARBITRATION. THE ARBITRATION CLAUSE WAIVES YOUR RIGHT TO A JURY TRIAL, AND TO PARTICIPATE IN CLASS ACTION, COLLECTIVE ACTIONS, AND ALL OTHER TYPES OF COURT PROCEEDINGS. YOU ACKNOWLEDGE THAT YOU UNDERSTAND AND – UNLESS YOU VALIDLY OPT-OUT – EXPRESSLY AGREE TO THE MANDATORY ARBITRATION CLAUSE AND CLASS ACTION/ JURY TRIAL WAIVER.

*See* ECF No. 23-1 ("Terms of Service').

The Arbitration Agreement further delegates gateway issues of arbitrability to the arbitrator:

The arbitrator – not a federal, state, or local court, or government agency—shall have exclusive authority to resolve any Disputes, including those related to the interpretation, applicability, enforceability, or formation of this Arbitration Agreement, and any claim that all or part of the Arbitration Agreement is void or voidable. The arbitrator shall also have authority to determine all threshold arbitrability issues…

*See id*. at 21.

Lastly, "disputes" is broadly defined at:

. . . any dispute, claim, or controversy arising from or related to the Services, including those related to the formation, breach, termination, enforcement, scope, validity, or applicability of the Agreement or the Arbitration Agreement, or your rights under those agreements.

*See id*.

## II.    Procedural History

Plaintiff filed a Complaint on March 10, 2025, against Zynga, Inc. and Take Two Interactive Software, Inc. *See* ECF No. 1. Plaintiff twice amended the Complaint on March 19,

---

standard similar to summary judgment, where the court may consider "all relevant, admissible evidence submitted by the parties").

2025 and on May 8, 2025, naming only Zynga, Inc. as Defendant the last time. *See* ECF Nos. 7 and 9. Defendant filed a request for pre-motion conference on May 21, 2025. *See* ECF No. 11. Plaintiff filed a response letter on May 22, 2025. *See* ECF No. 15. Plaintiff requested a Clerk's Certificate of Default against Defendant, arguing that it has not responded to the amended complaint because a pre-motion conference is not required for a motion to compel arbitration. *See* ECF Nos. 16-17. On May 28, 2025, this Court directed the Clerk of Court not to issue the proposed certificate. *See* ECF No. 19. On June 6, 2025, this Court denied the request for pre-motion conference and granted Defendant leave to file its motion to compel arbitration. *See* ECF No. 21.

On June 23, 2025, Defendant moved the Court to compel Plaintiff to submit his claims to arbitration pursuant to the Federal Arbitration Act and the Agreement. *See* ECF No. 22. Defendant also requested that the Court stay these proceedings pending the resolution of this action in arbitration. *See id.* Defendant filed memorandums and declarations in support of their Motion. *See* ECF Nos. 23-25. On July 14, 2025, Plaintiff filed an Opposition and affirmations to Defendant's Motion. *See* ECF Nos. 26-28. On July 28, 2025, Defendants filed a reply in further support of their Motion. *See* ECF No. 29.

## LEGAL STANDARD

Arbitration Agreements are governed by the Federal Arbitration Act ("FAA"). The FAA provides that "'[a] written provision in ... a contract ... to settle by arbitration a controversy thereafter arising out of [the] contract ... shall be valid, irrevocable, and enforceable.'" *See Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 228 (2d Cir. 2016) (quoting 9 U.S.C. § 2). "The party seeking to compel arbitration bears an initial burden of demonstrating that an agreement to arbitrate was made." *Zachman v. Hudson Valley Fed. Credit Union*, 49 F.4th 95, 101–02 (2d Cir.

2022). The burden then "shifts to the party seeking to avoid arbitration to 'show[ ] the agreement to be inapplicable or invalid.'" *Id*. (quoting *Harrington v. Atl. Sounding Co.*, 602 F.3d 113, 124 (2d Cir. 2010)). "[T]he federal policy in favor of arbitration requires that any doubts concerning the scope of arbitrable issues be resolved in favor of arbitration." *Shaw Grp. Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115, 120 (2d Cir. 2003) (internal quotation marks and citation omitted). However, this policy "does not authorize federal courts to invent special, arbitration-preferring procedural rules." *Morgan v. Sundance, Inc.*, 596 U.S. 411, 418, (2022). Instead, "a court must hold a party to its arbitration contract just as the court would to any other kind [of agreement]." *Id*.

Therefore, if on a motion to compel arbitration the court determines that (i) the existence of the arbitration agreement itself is not at issue, and (ii) that the dispute between the parties is within the scope of the arbitration agreement, then the court must "direct[] the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C.A. § 4; *see also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011); *Holick v. Cellular Sales of N.Y., LLC*, 802 F.3d 391, 394 (2d Cir. 2015).

**DISCUSSION**

Defendant argues that the Court should compel arbitration because Baginsky signed the Terms of Service ("ToS"), which contains a valid arbitration clause encompassing its claims. Plaintiff does not dispute that he signed the ToS. Instead, Plaintiff contends that the Arbitration Clause ("Agreement") and delegation provision within is void because the provisions constitute fraud and are unconscionable. Furthermore, Plaintiff argues that even assuming the Agreement is valid, Plaintiff opted out of the Agreement and Defendant waived its right to arbitration.

5

**I.       Plaintiff Entered into a Valid and Enforceable Arbitration Agreement**

A court "may determine that an agreement to arbitrate exists where [(1)] notice of the arbitration provision was reasonably conspicuous and [(2)] manifestation of assent unambiguous as a matter of law. *Bernardino v. Barnes & Noble Booksellers, Inc.*, 2017 U.S. Dist. LEXIS 192814, *8 (S.D.N.Y. Nov. 20, 2017). As discussed above, Baginsky agreed to Zynga's express terms and conditions in the ToS. Section 15 of the ToS required Plaintiff to submit all disputes arising under the ToS to arbitration. ECF No. 23, Ex. 1, at 1. Baginsky signed the ToS and presumably understood these terms. Therefore, as Plaintiff concedes, he entered into an enforceable agreement, which includes the Arbitration Clause in said ToS.

**a.   The Arbitration Agreement is Not Invalidated by Reason of Fraud in the Execution, Fraud in the Inducement, or Unconscionability**

Plaintiff argues that the Agreement is void because Defendant misrepresented the character of the Agreement and its users. Thus, in defense to arbitration, Plaintiff agues the Agreement was unconscionable and constitutes fraud in the execution and fraud in the inducement. All arguments fail for the reasons that follow.

Plaintiff generally argues there was fraud in the execution because Defendant "misrepresented its poker game to the point that he did not know or have a reasonable opportunity to know" the true nature of the ToS. *See* ECF No. 26 at 10. This argument is unavailing. "Fraud in the execution occurs when there is a misrepresentation as to the very character of the proposed contract itself." *Segui v. Solar Mosaic, LLC*, 802 F. Supp. 3d 545, 561 (S.D.N.Y.) (internal quotations and citations omitted); *see also Hetchkop v. Woodlawn at Grassmere, Inc.,* 116 F.3d 28, 31-32 (2d Cir. 1997) ("Fraud in the execution occurs where there is a 'misrepresentation as to the character or essential terms of a proposed contract,' and a party

signs without knowing or having a 'reasonable opportunity to know of its character or essential terms.'" (quoting Restatement (Second) of Contracts § 163)). Here, Baginsky does not dispute that he chose to play Zynga Poker and agreed to the terms of service. Compl. at ¶80. While he alleges he was mislead about the type of game he was signing up to play when agreeing to the terms and conditions, he does not sufficiently allege grounds to believe he agreed without knowing or having reasonable opportunity to know of the contract's character or essential terms. Indeed, to prevail on this defense, "a party must show excusable ignorance of the contents of the writing signed." *Segui v. Solar Mosaic,* LLC, 802 F. Supp. 3d at 561. To the contrary, Plaintiff's effort to contact Take Two's Customer Support team to raise concerns about the terms of service demonstrates he read and knew the content of what he was signing. ECF No. 26 at 20. Thus, the Agreement is not void due to fraud in the execution.

Plaintiff next argues the arbitration provision is void because Defendant fraudulently induced Plaintiff to enter into the contract. *See* ECF No. 26 at 13. A motion to compel arbitration can be defeated by fraudulent inducement when the party resisting arbitration shows that the arbitration agreement specifically, as opposed to the contract generally, was the result of fraud. See *Grimmett v. DMM Sols., Inc.*, 2024 U.S. Dist. LEXIS 224997, *5 (S.D.N.Y. Dec. 11, 2024). "It is well settled that a claim or defense of fraudulent inducement, when it challenges generally the enforceability of a contract containing an arbitration clause rather than specifically the arbitration clause itself, may be subject to arbitration." *Guerrero v. Gopuff*, 2025 NYLJ LEXIS 3844, *34-35 (S.D.N.Y. Dec. 10, 2025). The FAA "does not permit the federal court to consider claims of fraud in the inducement of the contract generally" as a reason not to enforce an arbitration agreement. *Grimmett*, 2024 U.S. Dist. LEXIS 224997, *5. A party cannot avoid arbitration "merely by stating that the arbitration clause is an element of the scheme to defraud"

but rather must show "some substantial relationship between the fraud or misrepresentation and the arbitration clause in particular." *Grimmett*, 2024 U.S. Dist. LEXIS 224997, *5 (citing *Campaniello Imports, Ltd. v. Saporiti Italia S.p.A.*, 117 F.3d 655, 667 (2d Cir. 1997)). Here, Plaintiff's allegations primarily concern how the *Zynga Poker* app operates and is represented. Indeed, Plaintiff alleges "that Defendant knowingly rigged Zynga Poker while publicly misrepresenting the fairness of the game and fraudulently inducing players to sign up to its terms and conditions." SAC at ¶58. Plaintiff does not mention the arbitration agreement specifically, nor does he make any allegation that he was specifically induced to agree to the arbitration provision. As such, Plaintiff fails to sufficiently allege that the Agreement is invalid based on fraudulent inducement. *See Hickey v. Smith*, No. 23-CV-02538 (MKV), 2025 WL 692052, at *8 (S.D.N.Y. Mar. 3, 2025) ("A valid claim that a Plaintiff was fraudulently induced to sign a contract including an arbitration provision 'does not prevent a court from enforcing a specific agreement to arbitration.'. . . '[A]n arbitration provision is severable from the remainder of a contract.'" (internal citations omitted)).

Lastly, Plaintiff argues the delegation provision is substantively and procedurally unconscionable. *See* ECF No. 26 at 15. "Under New York law, a delegation clause is unconscionable only if it is both procedurally and substantively unconscionable." *Billboard Media, LLC v. Wray*, No. 23-CV-7809 (AT) (SLC), 2024 WL 2941270, at *8 (S.D.N.Y. Apr. 25, 2024) (internal quotations and citations omitted). "The procedural element of unconscionability concerns the contract formation process and the alleged lack of meaningful choice; the substantive element looks to the content of the contract." *Id*. (internal quotations and citations omitted). For substantive unconscionability, Plaintiff relies on his arguments regarding fraud in

the execution and fraud in the inducement. For the reasons discussed in that section, this argument fails.

As for procedural unconscionability, Plaintiff argues he was not sufficiently on notice of the Agreement. *See* ECF No. 26 at 15-16. The Second Circuit in *Meyer* upheld the validity of a "sign-in-wrap" agreement posted by the ride-sharing app company Uber on its mobile app and enforced an arbitration provision contained in Ubers posted terms of service. *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 76 (2d Cir. 2017). As relevant here, the Second Circuit found that "[N]otice of the Terms of Service is provided simultaneously to enrollment, thereby connecting the contractual terms to the services to which they apply. We think that a reasonably prudent smartphone user would understand that the terms were connected to the creation of a user account." *Id*. at 78. Similarly to the type of "sign-in-wrap" agreement upheld in *Meyer*, notice of the ToS is provided at the top of the page every time a user signs in to the app. *See* ECF No. 23 at 5. As such, the Court finds Plaintiff was put on reasonable notice of the arbitration clause and delegation provision therein. Moreover, Plaintiff was offered a 30-day option to opt-out. See Def. Motion, ECF No. 23, Ex. 1 at 22; see *Kai Peng v. Uber Techs., Inc.*, 237 F. Supp. 3d 36, 55 (E.D.N.Y. Feb. 23, 2017) (the Eastern District found, based on holdings from other state's cases with similar 30-day opt-out provisions, that the opt-out provision in the delegation clause of the Arbitration Agreement substantially negates any challenge of procedural unconscionability with respect to the delegation clause). As such, Plaintiff's procedural unconscionability argument fails.

### II.    Plaintiff's Opt-Out

Plaintiff next argues that even assuming the validity of the arbitration provision, he is not bound because he opted out. *See* ECF No. 26 at 20-21. The relevant ToS is the 2024 version the

Plaintiff signed when he signed up for Zynga Poker on March 20, 2024. While he created an account for the first time in 2008, he had to accept the 2024 version of the ToS when re-activating his account. His claims are based on interactions with Zynga Poker starting in 2024, after signing the updated ToS. Plaintiff argues in his Opposition that he opted out of the arbitration clause in October 2024. The Agreement contains an opt-out provision stating that users may opt out within 30 days by mailing a notice to Take-Two Interactive Software, Inc. with their name, address, account name, and a "clear, signed statement that you do not agree to the Arbitration Agreement." ECF No. 23, Ex. 1 at 22. While Plaintiff concedes he failed to meet certain requirements such as mailing in the notice or noting "Arbitration Opt Out," he argues he nonetheless successfully opted out in October 4, 2024 when he contacted Zynga Customer Support. *See* ECF No. 26 at 20. This is unpersuasive. As an initial matter, the October 4, 2024 communication did not meet the Agreement's 30-day requirement nor was the notice mailed to Take-Two. Even further, the October 4 communication involves complaints regarding gameplay and dispute of charges. *See* ECF No. 26 at 3. This communication makes no mention of opting out of the arbitration provision. *See id.* To the extent Plaintiff argues his November 6, 2024 letter from his attorney to Zynga referring to anticipated litigation constitutes a valid opt-out, this argument fails for the same reasons as the October 4 communication. Accordingly, the Court finds Plaintiff did not successfully opt-out of the Agreement.

### III.    The Arbitrator Should Decide Whether Defendants Have Waived Their Right to Arbitration

Plaintiff next argues that Defendants waived their right to arbitration through their actions, which included "explicit" posturing that it was ready to litigate for months before raising arbitration. *See* ECF No. 26 at 21-22. Essentially, Plaintiff contends that by corresponding with

Plaintiff and agreeing to review their evidence instead of serving a Legal Notice and initiating arbitration proceedings, Defendants waived their right to arbitrate this dispute. *See id*.

As a threshold matter, the Court must determine whether the issue of waiver is one to be decided by the Court or instead a question properly submitted to the arbitrator. The answer depends on the type of waiver asserted. The Second Circuit has made clear that where a plaintiff asserts a defense of waiver based on a defendant's litigation conduct, the issue of waiver is one for the Court to decide. *See Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 80–81 (2d Cir. 2017) ("When the party seeking arbitration has participated in litigation regarding the dispute, the district court can properly decide the question of waiver."); *See also Bell v. Cendant Corp.*, 293 F.3d 563, 569 (2d Cir. 2002). However, where a plaintiff's assertion of waiver is based on a defendant's pre-litigation actions, the issue of waiver is one for the arbitrator to decide. *Olin Holdings Ltd.,* 73 F.4th 92, 105 (2d Cir. 2023).

Here, Baginsky's waiver argument is based on Defendants' actions before Plaintiff filed this lawsuit, not Defendants' conduct in this litigation. Plaintiff informed Zynga of intent to file suit, to which Zynga sent two correspondences: one asking for the evidence of manipulative gameplay and another asking for more time to review the 7-hour video. ECF No. 28, at ¶¶7,9. Zynga raised its arbitration provision in a call with Plaintiff's counsel over a month before the Complaint was filed. *Id.*, at ¶13. Therefore, Plaintiff's waiver argument is one for the arbitrator, not the Court, to decide. The Court thus declines to rule on this issue. *Herman v. Katten Muchin Rosenman LLP*, No. 25-cv-3162, 2025 U.S. Dist. LEXIS 167091, at *5–7 (S.D.N.Y. Aug. 27, 2025) (where a plaintiff "argues [that] Defendants' waiver occurred prior to - and not because of - Defendants' conduct litigating these claims. . . courts decline to decide the question of waiver.").

## IV.    Defendant's Motion to Dismiss or Stay These Proceedings

The Second Circuit has held that "the text, structure, and underlying policy of the FAA mandate[s] a stay of proceedings when all of the claims in an action have been referred to arbitration and a stay requested." *Katz v. Cellco P'ship*, 794 F.3d 341, 347 (2d Cir. 2015); *see also Porcelli v. JetSmarter, Inc.*, 2019 U.S. Dist. LEXIS 94287, at *11 (S.D.N.Y. June 5, 2019). As that is the case here, the Court hereby **GRANTS** Defendant's request for a stay and stays this case pending arbitration.

### CONCLUSION

For the foregoing reasons, Defendant's Motion to Compel arbitration is **GRANTED**. The Court refers Plaintiff's claims to arbitration and **STAYS** this action pending the outcome. The Court respectfully directs the Clerk of Court to terminate the pending motions at ECF No. 22. The parties are ordered to file a joint status report **by May 25, 2026**, and every 60 days thereafter.

**SO ORDERED.**

**Dated:  March 24, 2026**

**New York, New York**                                    **ANDREW L. CARTER, JR.**
                                                                         **United States District Judge**

12